**Daniel J. MONACO and Denise E. Monaco, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–4787.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 4, 1981.

Decided Nov. 9, 1981.

Rehearing Denied Dec. 14, 1981.

---

**130**

David M. McKim, Cotchett, Dyer & Illston, San Mateo, Cal., for plaintiffs-appellants.

John C. Hoyle, Washington, D. C., argued, for defendant-appellee; Frederic D. Cohen, Washington, D. C., on brief.

Before NELSON and CANBY, Circuit Judges, and BATTIN,* District Judge.

NELSON, Circuit Judge:

The appellants, Daniel J. Monaco and Denise E. Monaco [hereinafter "Daniel" and "Denise," respectively, or "the Monacos"], appeal from an order of the district court granting the motion of the United States to dismiss claims brought against it under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346, 2671–2680 (1976 & Supp.1979). The district court concluded that an exception to the FTCA for claims incident to military service barred the Monaco's claims and accordingly dismissed all claims for lack of subject matter jurisdiction. We affirm.

### FACTS

During World War II, from May, 1943, until February, 1946, Daniel was stationed at the University of Chicago, where he participated in the Army Specialized Training Program. As part of the program, Daniel was required to perform calisthenic exercises at the University's football field. Dur-

ing breaks, he relaxed on the stadium seats. Daniel concedes that he was engaged in active military service at the time.

The Monacos allege that while Daniel was involved in the program, experiments in atomic reactions were being conducted in a laboratory beneath the stadium in connection with the "Manhattan Project," the research and development of the world's first atomic weapon.[1] The Monacos were not apprised of Daniel's exposure to radiation until July of 1971 when they were informed that Daniel had contracted radiation induced cancer of the colon. They learned at the same time that the radiation induced a genetic change which caused Daniel's child Denise to be born with a birth defect known as arterio-venous anomaly in the brain. This defect has induced three brain hemorrhages, aphasia and other permanent injuries.

### PROCEEDINGS BELOW

After denial of administrative claims, the Monacos filed complaints with the district court. Daniel filed the instant FTCA suit seeking $1,000,000 for the physical injury he suffered, as well as for the mental pain and suffering that was occasioned by his daughter's birth defect. The complaint alleges that the Government "knew or should have known of the danger posed" by exposing military personnel to atomic radiation, and that the Army was negligent in permitting exposure to radiation. Denise filed a separate FTCA action against the United States in which she also sought $1,000,000 in damages. Denise's complaint rests on the same allegations as her father's and alleges that the Government's negligence resulted in chromosomal and genetic changes in her father which caused her to be born with the birth defect.

The Monacos' separate actions were consolidated for purposes of argument and decision. On November 2, 1979, the district court for the Northern District of California issued an Order dismissing both actions

---

* Honorable James F. Battin, Chief Judge, United States District Court for the District of Montana, sitting by designation.

1. For purposes of this appeal, we treat all of the Monacos' allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

on the authority of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny.

## DISCUSSION

■ Traditional sovereign immunity has been waived for tort claims against the United States by the Federal Tort Claims Act, which exposes the Government to liability arising from personal injury or property damage caused by the negligence of any Government employee "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1976). While the FTCA "waives the Government's immunity from suit in sweeping language," *United States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523, 528 (1951), a number of statutory and judicial exceptions limit the waiver, and if a claim falls within any such exception the court is without jurisdiction to hear the case. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390, 398 (1976); *Dalehite v. United States,* 346 U.S. 15, 30–31, 73 S.Ct. 956, 965–66, 97 L.Ed. 1427, 1438 (1953).

One exception to the waiver of immunity is for injuries to military personnel. In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court denied recovery for injuries or fatalities sustained by military personnel on active duty as a result of the negligence of others in the armed services. The Court concluded that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159, 95 L.Ed. at 161.

The Supreme Court, in *Feres* and subsequent cases, has suggested several reasons for the military exception. Noting that the FTCA only extends liability to the Government "in the same manner and to the same extent as a private individual under the circumstances," 28 U.S.C. § 2674 (1976), the Court has concluded that there is no private liability parallel to one that might be found in the unique relationship between an armed service and its personnel. *Feres,* 340 U.S. at 141–42, 71 S.Ct. at 156–57, 95 L.Ed. 158–59; *see also Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665, 670 (1977). The Supreme Court has noted three specific aspects of the relationship between an armed service and its personnel that make the relationship unique and application of the FTCA unwise. First, the Court has questioned the wisdom of allowing suits in the context of "the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits ... were allowed for negligent orders given or negligent acts in the course of military duty." *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139, 143 (1954) *quoted in Stencel,* 431 U.S. at 671–72, 97 S.Ct. at 2058, 53 L.Ed.2d at 670. Second, the Court has noted that, as the FTCA requires application of the "law of the place where the act or omission occurred," 28 U.S.C. § 1346 (b) (1976), recovery by military personnel would be "dependent upon geographic considerations over which they have no control and ... laws which fluctuate in existence and value." *Feres,* 340 U.S. at 143, 71 S.Ct. at 158, 95 L.Ed. at 159. The Court concluded that this would "hardly be a rational plan." *Id.; see also Stencel,* 431 U.S. at 671, 97 S.Ct. at 2057, 52 L.Ed.2d at 670. Finally, military personnel are afforded recovery pursuant to the Veterans' Benefits Act, 38 U.S.C. § 301–1008 (1976 & Supp. 1978), which provides "no fault" compensation as a substitute for tort liability and limits the extent of governmental liabilities for service-related injuries. The Court has concluded that a tort claim under the FTCA would circumvent the limitation of the act and "judicially admit at the back door that which has been legislatively turned away at the front door." *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059, 52 L.Ed.2d at 671 (quoting *Laird v. Nelms,* 406 U.S. 797, 802, 92 S.Ct. 1899, 1902, 32 L.Ed.2d 499, 504 (1972)).

Despite the development of these elaborate policy reasons for the *Feres* doctrine,

the basis for the exception has recently become the subject of some confusion. In *United States v. Muniz,* 374 U.S. 150, 159–62, 83 S.Ct. 1850, 1856–58, 10 L.Ed.2d 805, 813–15 (1963), the Supreme Court appeared to question many of the reasons for the military exception and concluded that the decision was "best explained" by the special command relationship between soldiers and their superiors, 374 U.S. at 162, 83 S.Ct. at 1858, 10 L.Ed.2d at 815. But in *Stencel,* 431 U.S. at 672–73, 97 S.Ct. at 2058–59, 52 L.Ed.2d at 670–72, the Supreme Court applied each of the factors summarized above in reaffirming and extending the *Feres* doctrine. And several cases in this circuit have held the military exception applicable even where there was no command relationship between the claimant and the individual tort-feasor. *See Troglia v. United States,* 602 F.2d 1334 (9th Cir. 1979); *United States v. Lee,* 400 F.2d 558 (9th Cir. 1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969).

This confusion has led to widespread questioning of the *Feres* exception. *See Hunt v. United States,* 636 F.2d 580, 589 (D.C.Cir.1980); *Veillette v. United States,* 615 F.2d 505, 506 (9th Cir. 1980) (applying *Feres* "reluctantly"); *Parker v. United States,* 611 F.2d 1007, 1010–11 (5th Cir. 1980); Note, *From* Feres *to* Stencel: *Should Military Personnel Have Access to FTCA Recovery?* 77 Mich.L.Rev. 1099 (1979). Nevertheless, the exception has been applied consistently to deny recovery whenever injuries arise from actions incident to military service. *See, e. g., Stanley v. CIA,* 639 F.2d 1146 (5th Cir. 1981); *Veillette,* 615 F.2d at 507; *Troglia,* 602 F.2d at 1339; *In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762 (E.D.N.Y. 1980). The most convincing explanation for the continued vitality of the *Feres* doctrine was given recently by the District of Columbia Circuit in *Hunt v. United States,* 636 F.2d at 599 (citations omitted):

> [T]he protection of military discipline . . . serves largely if not exclusively as the predicate for the *Feres* doctrine. Although the [Supreme] Court has woven a tangled web in its discussion of the "dis-

tinctly federal" notion and of the alternative compensation system, it has not wavered on the importance of maintaining discipline within the armed forces. The Court has found it unseemly to have military personnel, injured incident to their service, asserting claims that question the propriety of decisions or conduct by fellow members of the military. Only this factor can truly explain the *Feres* doctrine and the crucial line it draws . . . .

While this explanation is not fully convincing, especially in cases of litigation involving military personnel who never had a command relationship with one another, it does provide a consistent foundation for the decided cases.

■ While courts have applied the *Feres* doctrine broadly, the exception does not extend to all instances in which an injury is remotely related to activities incident to military service. Thus, in *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Supreme Court allowed recovery for a discharged veteran who complained of receiving negligent treatment after his discharge for an injury received while on active duty. The Court focused on when the negligent act took place and concluded that "[s]ince the negligent act giving rise to the injury in the present case was not incident to the military service," the plaintiff's claim was not barred. 348 U.S. at 113, 75 S.Ct. at 144, 99 L.Ed. at 144. *Cf. Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949) (recovery allowed where claimant was struck by army vehicle while claimant was not on active duty). Thus any claimant whose injury was not the result of negligence occurring while on active duty should be allowed to recover. This result is consistent with the *Hunt* explanation that the *Feres* doctrine relies on the protection of military discipline. Charges of negligent acts taken when the claimant was not in the service cannot implicate any command decision involving the claimant.

### A. Daniel Monaco's Claim for Recovery for his Cancer.

■ Daniel hopes to avoid the clear impact of *Feres* by claiming that his injury

was his cancer, which manifested itself after he left the service, rather than his in-service exposure to radiation. That Daniel's injury did not occur until after he left the service does not, however, bring him within the analysis in *Brown*, as he claims. In *Brown* recovery was allowed, not because the *injury* occurred after the claimant left the service, but because the *negligent act itself* occurred post-service. Daniel's injury, by his own allegation, was the direct result of his exposure to radiation while in the service—there is no allegation of post-service negligence.

Neither can the analysis in *Brown* be extended to include post-service injury resulting from in-service negligence. There is no salient difference between a claim for injuries manifest before and injuries manifest after the claimant leaves the service. Indeed, it would be anomalous for recovery to hinge on a fact as fortuitous as when an injury becomes apparent. Daniel appears to argue that because he is now a civilian, the concerns surrounding suits in the peculiar command relationships in the military are no longer significant. This argument is without merit. Courts have consistently denied claims of former military personnel, or of their spouses or children who were never in the military. *E. g., Feres*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (two of the three cases involved in the decision were brought by widows); *Uptegrove v. United States*, 600 F.2d 1248 (9th Cir. 1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980); *see also Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059, 52 L.Ed.2d at 671 (action brought by third-party indemnity plaintiff was held to have a negative effect on military discipline).

### B. *Denise Monaco's Claim for Recovery for her Birth Defect.*

Denise attempts to escape the *Feres* doctrine and clear the way to recovery un-

der the FTCA with two arguments. Her first argument is similar to that of her father, and must similarly be rejected. Specifically, Denise claims that her injury was not the result of an in-service injury because the chromosomal change in her father which induced the injury was no injury.

As indicated above, the proper focus in applying the *Feres* doctrine is not the time of injury, but the time of the negligent act. Whether Denise's injury "occurred" when she was born with a birth defect or when her father suffered chromosomal change, the allegedly negligent act drawn into question was performed while Daniel was in the service. Thus, just as Daniel could not recover on the grounds that his injury was post-service, we cannot grant Denise recovery on these grounds.[2]

Denise's second argument is that *Feres* does not block her claims because she was never a member of the armed forces. She argues that her claim can thus have no effect on discipline between soldiers and their superiors, and points out that she can recover no benefits under the Veterans' Benefits Act for her injuries.

The Supreme Court rejected both aspects of this argument in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). In *Stencel* the Court denied recovery by a third party against the United States for a claim seeking indemnity for any damages paid a serviceman. While the party seeking indemnity was not a member of the armed forces, the Court concluded:

> [W]here the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party. The litigation would take virtually the identical form in either case,

---

**2.** Daniel asserts in one short paragraph that he also should be able to recover for his suffering due to Denise's injuries. But Daniel's concededly derivative claim is simply another injury in the line of causation from his initial in-service injury and *Feres* does not allow him to recover for it.

and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety.

431 U.S. at 673, 97 S.Ct. at 2059, 52 L.Ed.2d at 671.

The Court similarly rejected the argument that non-military claimants should be entitled to recovery because of their inability to collect compensation under the Veterans' Benefits Act. The Court noted that the act "clothes the Government in the 'protective mantle of the Act's limitation of liability provisions,'" and concluded that "[t]o permit the petitioner's claim would circumvent this limitation thereby frustrating one of the essential features of the Veterans' Benefits Act." 431 U.S. at 673, 97 S.Ct. at 2058–59, 52 L.Ed.2d 671 (quoting *Cooper Stevedoring v. Kopke, Inc.*, 417 U.S. 106, 115, 94 S.Ct. 2174, 2179, 40 L.Ed.2d 694, 702 (1974)).

Denise's case differs from *Stencel* in that she seeks relief for an injury to herself rather than indemnity for losses due to injury to her father, but this does not change the substantive analysis: the court still must examine the Government's activity in relation to military personnel on active duty. It is precisely this type of examination the *Feres* doctrine seeks to avoid. Courts have reflected this analysis in several cases rejecting the claims of non-military plaintiffs seeking recovery for independent injuries stemming from allegedly negligent acts against military personnel. *E. g., Van Sickel v. United States*, 285 F.2d 87, 90 (9th Cir. 1960) (denying recovery for wrongful death action found to be "original and distinct cause of action granted to the heirs and personal representatives of the decedent to recover damages sustained by them"); *In re "Agent Orange" Product Lit-*

*igation*, 506 F.Supp. 762 (E.D.N.Y.1980) (denying recovery to children claiming for genetic injuries and birth defects caused by parents' exposure to Agent Orange); *Harrison v. United States*, 479 F.Supp. 529, 532–35 (D.Conn.1979), *aff'd without opinion*, 622 F.2d 573 (2d Cir. 1980) (wife's action for loss of consortium barred even though her action was "for damages to her own interest, not a remote consequence of the tortfeasor's injury to the husband").

## CONCLUSION

The *Feres* doctrine today stands on shaky ground with its precise justification somewhat confused. But the doctrine has been applied consistently to avoid examining acts of military personnel which were allegedly negligent with respect to other members of the armed services. While the injuries claimed by the Monacos may well have become manifest long after Daniel left the service, a court could not rule on either claim without examining acts occurring while Daniel was in the service. The result in this case disturbs us, particularly with respect to Denise. In her case, the price of avoiding examination of events long past, and involving her behavior in no respect, appears to be complete denial of recovery. If developed doctrine did not bind us we might be inclined to make an exception in cases such as this. Unfortunately, we are bound, and the decision of the district court must accordingly be

AFFIRMED.[3]

**3.** We have held in this case that the doctrine of sovereign immunity prevents Denise from recovering for her injury in the federal courts, but we encourage Denise to pursue any legislative remedies available to her. That she will be able to recover through such channels is unclear, but not without hope. In fact, courts have suggested that Congress passed the FTCA to relieve itself from a deluge of private bills seeking relief for citizens injured by the actions

of a government employee. *Feres*, 340 U.S. at 140–41, 71 S.Ct. at 156–57, 98 L.Ed. at 158; *Agent Orange*, 506 F.Supp. at 769. Perhaps if Congress is made aware of the seriousness of claims such as Denise's it will be moved to grant relief to the individuals who request it, or to change the FTCA to allow such recoveries in the federal courts. We sincerely hope Congress will do at least the former.