**Robin E. PERSONS; Estate of Kelly Persons; and Timothy Persons, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 89–55387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1990.

Decided Jan. 30, 1991.

those which were the subject of the revocation proceedings at issue here.

Thomas J. Massey, Massey & Feldman, San Diego, Cal., for plaintiffs-appellants.

John F. Cordes and Lowell V. Sturgill, Jr., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before NELSON and REINHARDT, Circuit Judges, and SINGLETON,* District Judge.

D.W. NELSON, Circuit Judge:

## OVERVIEW

Robin E. Persons and her four-year-old son Timothy appeal from the entry of a judgment dismissing their action against Balboa Naval Hospital and the United States Navy. The complaint alleges that as a result of the hospital's negligence, Petty Officer Kelly Persons (Robin's husband and Timothy's father) committed suicide. Appellants seek damages for the serviceman's wrongful death and for the Navy's alleged negligent failure both to warn them of Kelly Persons' condition and to provide them with adequate counseling. The district court entered a judgment dismissing the action for lack of subject-matter jurisdiction under the *Feres* doctrine. Appellants then filed this timely appeal. In what has now become a well trodden tradition, we reluctantly affirm the district court's disposition as to the wrongful death claim and the failure to warn. However, we reverse and remand with respect to the claim arising from the hospital's failure to provide adequate counseling.

* Hon. James K. Singleton, District Court Judge, United States District Court for the District of Alaska, sitting by designation.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are essentially uncontested.[1] In September 1987 Kelly Persons, a petty officer in the United States Navy, presented himself to the Balboa Naval Hospital's emergency room. His seven deep slash marks on each of his wrists bore witness to his deeply distressed emotional state and attested to his attempted suicide. Appellants claim that despite these clear symptoms, the physicians and staff members at the hospital failed to provide him with adequate counseling or treatment. After a few hours, and without being admitted to the hospital for observation, he was released. Some three months later, on December 23, 1987, Kelly Persons committed suicide.

He was survived by his wife, Robin Persons, and a four-year old son, Timothy. According to appellants, neither of them received any warning regarding Kelly's state prior to his suicide. Nor did they receive any psychological counseling after his attempted suicide or his actual one.

Appellants argue that the Navy has a legal obligation to provide free and adequate medical care both to its servicemembers and to their dependents. They claim that the Hospital's failure to warn or to provide adequate treatment resulted in Kelly Persons' suicide and in their own irreparable harm and mental anguish.

Appellants filed a malpractice and wrongful death suit against Balboa Naval Hospital and the United States Navy under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.[2] The United States filed a motion to dismiss for lack of subject-matter jurisdiction. On April 13, 1989, the district court granted the Government's motion on the ground that the Feres doctrine, Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), immunized the United States from claims arising out of activity incident to service. In reaching its decision, the district court relied on two Ninth Circuit precedents, Atkinson v. United States, 825 F.2d 202 (9th Cir.1987), cert. denied, 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988), and Monaco v. United States, 661 F.2d 129 (9th Cir.1981), cert. denied, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). Appellants filed a timely appeal on April 13, 1989.

## DISCUSSION

### a. Standard of Review

■ Determination of the district court's subject-matter jurisdiction is a question of law reviewed de novo. Atkinson, 825 F.2d at 204. In particular, this court must "review independently the question whether the Feres doctrine is applicable to the facts reflected in the record." McGowan v. Scoggins, 890 F.2d 128, 129 (9th Cir.1989).

### b. Application of the Feres doctrine to the medical malpractice claim

■ The FTCA waives traditional sovereign immunity for the tortious conduct of any Government employee. The Act renders the Government liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Although the FTCA does not on its face exempt military personnel, Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the Supreme Court has carved out an exception for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres, 340 U.S. at 146, 71 S.Ct. at 159. As Feres and subsequent cases suggest, the rationales for this doctrine are:

> (1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government

---

1. Because this case involves an appeal from an order dismissing for want of jurisdiction, we accept as true the factual allegations contained in appellants' complaint. Broudy v. United States, 661 F.2d 125, 126 n. 1 (9th Cir.1981).

2. In light of the liberal standards for amending pleadings, the district court proceeded on the complaint as if the appellants had properly named the United States rather than the Navy as the defendant.

to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure.

*Atkinson*, 825 F.2d at 204 (*citing Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 671–72, 97 S.Ct. 2054, 2057–58, 52 L.Ed.2d 665 (1977)). *See also United States v. Johnson*, 481 U.S. 681, 689, 107 S.Ct. 2063, 2068, 95 L.Ed.2d 648 (1987).[3]

Aside from expressing a general distaste for the *Feres* doctrine (shared, one might add, by countless courts and commentators), appellants seek to distinguish this case from relevant precedent by arguing that Kelly "was at liberty at the time of the incident." In addition, they contend that regardless of *Feres'* overall validity, it has no place in the medical malpractice field.[4] Because *Feres* is concerned above all with questions of military discipline, they argue, it should not apply to the "personal" medical needs of an "off-duty" sailor. Military considerations *per se* do not enter every minute treatment decision by the Naval hospital; therefore, appellants contend, *Feres* is inapposite.

As for fears concerning the lawsuit's impact on military discipline, appellants note that the Department of Defense prohibits its personnel from offering expert testimony concerning official information. In short, they reason that there is no justification whatsoever for importing *Feres* into this arena.

Alas, the doctrine has been imported long ago, and over similar objections. It is true that over the years, confusion has spread over its intricacies. *See Monaco*, 661 F.2d at 132 (stating that "the basis for the exception has recently become the subject of some confusion"). Thus, the notion of "incident to service" is a repository of ambiguity, *see Millang v. United States*, 817 F.2d 533, 535 (9th Cir.1987) (per curiam) (evoking the "somewhat elusive 'incident to service' standard"), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1290, 99 L.Ed.2d 500 (1988), and it is entirely unclear which of the doctrine's original justifications survive. *Compare United States v. Shearer*, 473 U.S. 52, 58 n. 4, 105 S.Ct. 3039, 3043 n. 4, 87 L.Ed.2d 38 (1985) (characterizing the geographic uniformity and alternative benefits rationales as "no longer controlling") *and Monaco*, 661 F.2d at 132 (stating that "the protection of military discipline ... serves largely if not exclusively as the predicate for the *Feres* doctrine") *with United States v. Johnson*, 481 U.S. 681, 686–91, 107 S.Ct. 2063, 2066–69, 95 L.Ed.2d 648 (1987) (approvingly mentioning the three rationales associated with the *Feres* doctrine).

For all the complexity of the evolution of the doctrine, however, what is *not* unclear and escapes all current confusion is its overall trend. From *Brooks*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 the first Supreme Court case addressing an FTCA suit brought by a service person, to *United States v. Johnson, supra*, jurisprudence has been guided by an increasing sense of awe for things military. As a result, practically any suit that "implicates the military judgments and decisions," *id.* 481 U.S. at 691, 107 S.Ct. at 2069, runs the risk of colliding with *Feres*. *See also Stencel*, 431 U.S. 666, 674, 97 S.Ct. 2054, 2059, 52 L.Ed.2d 665 (Marshall, J., dissenting) (criticizing the premise that "in any case involving a member of the military on active duty *Feres* ... displaces the plain language of the Tort Claims Act.").[5]

---

**3.** The third rationale was not mentioned by the *Feres* Court but was subsequently added in *Stencel, supra*. A recent Ninth Circuit opinion offers a detailed review of the *Feres* doctrine and its various applications. *See McGowan*, 890 F.2d 128.

**4.** Much of appellants' brief is devoted to a critique of Supreme Court jurisprudence in the area, with the help of references to Justice Scalia's dissent in *Johnson* and to the first *Atkinson* opinion that was later withdrawn in light of

*Johnson*. *See Atkinson v. United States*, 804 F.2d 561 (9th Cir.1986), *modified*, 813 F.2d 1006 (9th Cir.1987). For better or for worse, these do not constitute controlling authority.

**5.** Indeed, even suits involving *civilian* plaintiffs are barred when courts fear that the action might "bring into question command or personnel decisions by military personnel." *McGowan*, 890 F.2d at 138. *See, e.g., Norris v. Lehman*, 845 F.2d 283 (11th Cir.1988); *Stauber v. Cline*,

In view of these circumstances, appellants' first claim must necessarily fail. Although he was off-duty, Kelly Persons enjoyed the use of the naval hospital "solely by virtue of his status as a serviceman," *Millang*, 817 F.2d at 535, and the doctors who treated him were subject to military orders.[6] Courts have consistently accorded these factors decisive weight in determining whether activity was "incident to service." In *Millang*, an off-duty officer was run over by a military police vehicle while attending a picnic. The court found that the accident "arose out of activity incident to service" because use of the picnic area hinged on Millang's military status and because the vehicle's driver was an officer subject to military command. *Id.* at 534–35. *See also Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir.1986) (noting that "use of the Special Services Center [where the accident originated] was restricted to members of the military").[7] This is especially true in cases alleging medical malpractice in a military facility. In this Circuit, *Atkinson*, 825 F.2d 202 (barring suit by servicewoman alleging that negligent medical treatment caused her child to be stillborn), and *Veillette v. United States*, 615 F.2d 505 (9th Cir.1980) (wrongful death

suit on behalf of serviceman for alleged negligence by employees of naval hospital barred, even though deceased was off-duty at the time of the accident) are controlling.[8]

### c. Application of Feres to appellants' claim for failure to warn

Appellants' second claim is that Robin and Timothy Persons have a separate cause of action under the FTCA which *Feres* cannot block because neither of them ever was a member of the armed forces. In addition, they assert that their suit, rather than springing from Kelly's, rests on wholly independent grounds: the hospital's duty to warn them of the impending suicide. Finally, they contend that the *Feres* rationales do not apply to such claims.[9]

Particularly relevant in this regard is this Circuit's decision in *Monaco* which barred the daughter of a serviceman exposed to atomic radiation from bringing suit against the United States to recover for the birth defects which she tragically inherited. Specifically, *Monaco* rejected the argument that "she was never a member of the armed forces," and that she would not recover benefits under the Vet-

---

837 F.2d 395 (9th Cir.), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988).

**6.** The relevant distinction, as the government notes, runs between servicepersons who are on "active duty" and those who have been discharged or are on furlough, not between "off-duty" and "on-duty" servicepersons.

**7.** As the Sixth Circuit has observed, "in recent years the [Supreme] Court has embarked on a course dedicated to broadening the *Feres* doctrine to encompass, at a minimum, *all* injuries suffered by military personnel that are even remotely related to the individual's *status* as a member of the military ..." *Major v. United States*, 835 F.2d 641, 644 (6th Cir.1987), *cert. denied*, 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988).

**8.** Other Circuits have reached similar conclusions. *See, e.g., Appelhans v. United States*, 877 F.2d 309, 311 (4th Cir.1989) (holding that "[t]he fact that [the] injury occurred as a result of medical treatment by military doctors ... conclusively demonstrates that the injury was 'incident to service'"); *Ricks v. United States*, 842 F.2d 300, 301 (11th Cir.1988) (per curiam) ("the provision of benefits to soldiers because of their

status as military personnel is considered 'activity incident to service,' and ... military medical care constitutes such a benefit") (citation omitted), *cert. denied*, 490 U.S. 1031, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1989). Moreover, the *Feres* trilogy itself involved two medical malpractice cases. *See Griggs v. United States*, 178 F.2d 1 (10th Cir.1949); *Jefferson v. United States*, 178 F.2d 518 (4th Cir.1949).

The rare Ninth Circuit case to have resisted *Feres'* ever-expanding reach in recent years, *McGowan*, 890 F.2d 128, involved a civilian History teacher who was visiting an Air Force Base on a personal errand when he allegedly was subject to assault, battery and false arrest. 890 F.2d at 137. His presence on the base was the result of *past*, not *current* military service. *Id.* at 138. Still, despite the tenuousness of the plaintiff's ties to the military, Judge Sneed suggested in his concurring opinion that this was a "closer case" than the majority believed. *Id.* at 139 (Sneed, J., concurring). Given current indications emanating from the Supreme Court, he may indeed be right.

**9.** Thus, appellants argue that a widow or a child are not compensated by the government for their independent injuries and that their claim would not undermine military discipline.

erans' Benefits Act. *See Monaco*, 661 F.2d at 133–34. The court also noted, citing to *Stencel, supra,* that her suit inevitably would enmesh the judiciary in military inquiries of the type *Feres* sought to avoid. *Monaco*, 661 F.2d at 134.[10]

This reasoning is shared by almost all Circuits. The lone discordant voice in this unanimous chorus is *Del Rio v. United States*, 833 F.2d 282 (11th Cir.1987).[11] *Del Rio* involved a servicewoman's claim on behalf of herself and her child which alleged negligent prenatal care by military medical personnel.[12] The court allowed this suit, holding that "[t]he three *Feres* rationales clearly are not present in a suit by the child of a serviceperson for negligence of military medical staff." *Id.* at 287.

Although *Del Rio* finds support in both reason and equity, it cannot suffice to overcome the overwhelming contrary precedent.[13] This is as true of appellants' claim for loss of consortium as of their allegation that the hospital failed to warn them, even assuming that the latter constitutes an independent cause of action under California law. By current legal standards, they all must be viewed as "derivative" claims, having their genesis in Kelly's service-related death. *See, e.g., Gaspard v. United States*, 713 F.2d 1097 (5th Cir.1983) (notwithstanding existence of independent cause of action under state law and absence of alternative remedy under the Veterans' Benefit Act, *Feres* bars serviceman's wife's claim); *De Font v. United States*, 453 F.2d 1239 (1st Cir.), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972) (although the wife and children of a deceased serviceman had an independent cause of action for emotional distress caused by his death, *Feres* bars their suit).

### d. *Application of* Feres *to claim for failure to provide counseling*

■ Appellants' third allegation is that they were denied the psychological assistance to which they were entitled and of which they were in need in the aftermath of Kelly's tragic death. Unlike plaintiffs' other claims or those dismissed in cases cited above, this one alleges harmful conduct directed exclusively at the dependents and not involving military decisionmaking toward enlisted personnel. Of course, the claim is *related* to Kelly's suicide to the extent that the psychological trauma probably bears the imprint of his death. But the hospital's alleged breach of its duty after the tragedy was "completely independent

---

**10.** In *Stencel,* which involved a third-party suit against the government, the Supreme Court observed:

> the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party. The litigation would take virtually the identical form in either case ... The trial would, in either case, involve second-guessing military orders ...

*Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059.

**11.** The Persons also cite to *West v. United States*, 729 F.2d 1120 (7th Cir.1984), in which a serviceman's daughters who were injured as a result of the army's negligent mistyping of their father's blood were allowed to bring an action under the FTCA. Writing for the court, Judge Cudahy explained that "the fact that a lawsuit might involve some inquiry into military activities is not, without more, a reason for barring the plaintiff's claim." *Id.* at 1125. Finding the "concern for military discipline" slim in that case, the court held that *Feres* would not apply. Regrettably for appellants, the panel's opinion subsequently was vacated—and the district court's dismissal on *Feres* grounds affirmed *en*

banc. *West v. United States*, 744 F.2d 1317 (7th Cir.1984) (en banc), *cert. denied*, 471 U.S. 1053, 105 S.Ct. 2113, 85 L.Ed.2d 478 (1985).

**12.** Del Rio delivered twins. One was injured; the other died. 833 F.2d at 284.

**13.** Additionally, the handful of cases the *Del Rio* court cites to back its position have little bearing on the applicability of *Feres. See Del Rio*, 833 F.2d at 286–87. *Burgess v. United States*, 744 F.2d 771 (11th Cir.1984) involved a motion to dismiss for failure to file a timely notice; *Costley v. United States*, 181 F.2d 723 (5th Cir. 1950), dealt with the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a); *Portis v. United States*, 483 F.2d 670 (4th Cir.1973), addressed a statute of limitations issue; and in *Williams v. United States*, 435 F.2d 804 (1st Cir.1970), the government had admitted liability and the trial was concerned solely with the extent of damages. Not one of the cases mentions *Feres,* let alone shed some light on its scope. *See also Irvin v. United States*, 845 F.2d 126, 131 (6th Cir.), *cert. denied*, 488 U.S. 975, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988) (criticizing the *Del Rio* court's use of authority).

of the purported negligence" that led to Kelly's demise. *Kohn v. United States,* 680 F.2d 922, 926 (2d Cir.1982). As such, it interrupted the causal chain running from the hospital's purportedly negligent treatment of Kelly Persons and set in motion a new sequence of events.

Precedent comes to the rescue of common sense. In *Broudy v. United States,* 661 F.2d 125 (9th Cir.1981), we examined Alice Broudy's claim that the Government should be liable for its failure to warn her husband, Major Broudy, about the dangers of nuclear radiation exposure. We held that if the Government committed a separate, post-discharge negligent act, for instance if the Government learned of the danger after Major Broudy left the service, "her claim would be cognizable under the FTCA." *Id.* at 128.[14] *See also Monaco,* 661 F.2d at 132, 133 (recovery would be allowed if "the *negligent act itself* occurred post-service") (emphasis in original).

In *Kohn,* the Second Circuit followed a similar reasoning. Marc Kohn, an active duty serviceman, was shot to death by a fellow soldier. His parents' action claiming damages for Marc's suffering and for their loss of his society and support was properly found barred by *Feres.* 680 F.2d at 925. However, they also alleged that the Army had mistreated them *after* their son's death by, among other things, releasing fraudulent information about the shooting, mailing recruitment literature to the family home after Marc's death and wrongfully sending a copy of Marc's autopsy replete with photographs to the plaintiffs instead of their attorney. *Id.* at 924. Judge Feinberg's opinion reversed the district court's holding that this cause of action was barred by *Feres,* explaining that the doctrine "does not preclude recovery for independent, post-service negligent acts by the

military." *Id.* at 926.[15] Here, as there, the Army's negligence was related to the serviceman's death; here, as there, the line of causation nonetheless was interrupted by the commission of an independent wrongful act.

Certainly, had Timothy broken a limb and been rushed to the hospital only to see its doors shut in his face, *Feres* could not immunize the government from suit. We see little if any difference in this case which involves the treatment of a mental condition.[16] The fact that the latter can be traced back to some degree to an incident implicating an active-duty serviceman is of scant relevance: psychological symptoms follow long and meandering paths, irreducible to any single event. If the application of *Feres* were to hinge on whether the dependent's need for counseling springs from a military matter, one would have to identify the original catalyst of the plaintiff's mental state. Even the *Feres* doctrine, unsound and illogical as it might be, cannot contemplate such patent impossibilities.

*Feres* aside, a long and obstructed way stands between the Persons and potential recovery. For example, appellants must establish that the Navy hospital breached a legal duty by failing to provide them with counseling services. Although military medical personnel are under a duty to use due skill in attending to their patients once they have been admitted for treatment, *see, e.g, Costley,* 181 F.2d 723, it is by no means clear whether admittance itself is mandatory or discretionary. *See Denny v. United States,* 171 F.2d 365 (5th Cir.), *cert. denied,* 337 U.S. 919, 69 S.Ct. 1161, 93 L.Ed. 1728 (1949); *see also* 10 U.S.C. § 1076(a) (noting that a dependent is entitled to medical care "subject to the availability of space and facilities and the capabilities of the medical

---

**14.** We reiterated this view after the district court once again dismissed the suit on remand. *See Broudy v. United States,* 722 F.2d 566, 570 (9th Cir.1983) (*Broudy II*).

**15.** On remand, the district court found the United States "liable for distress caused to the next of kin by the cremation or retention of parts of Marc Kohn's body and by the embalming of the body" in violation of plaintiffs' deep religious

beliefs. *Kohn v. United States,* 591 F.Supp. 568 (E.D.N.Y.1984), *aff'd,* 760 F.2d 253 (2d Cir. 1985).

**16.** Under 10 U.S.C. § 1076, dependents of servicepersons are entitled to medical care prescribed by section 1077 which includes the "[t]reatment of nervous, mental, and chronic conditions."

... staff"). In short, we express no view as to the merits of appellants' claim or as to remaining jurisdictional requirements.[17] Simply, we hold that, its long arm notwithstanding, *Feres* does not reach the Persons' claim for failure to provide counseling.

## CONCLUSION

It would be tedious to recite, once again, the countless reasons for feeling discomfort with *Feres*, its direct offspring, or its more distant offshoots regarding "derivative" non-military claims.[18] *See, e.g., United States v. Johnson*, 481 U.S. at 692–703, 107 S.Ct. at 2069–2075 (Scalia, J., dissenting); *Stencel, supra*, 431 U.S. at 674–76, 97 S.Ct. at 2059–60 (Marshall, J., dissenting). Seemingly manacled by precedent, this Circuit has repeatedly expressed its strong reservations before ultimately overcoming them. *See, e.g., Atkinson*, 825 F.2d at 206 (grudgingly reversing a prior decision in light of *Johnson*); *Monaco*, 661 F.2d at 134 (confessing that "[t]he result in this case disturbs us ... If developed doctrine did not bind us we might be inclined to make an exception ... Unfortunately, we are bound"); *Veillette*, 615 F.2d at 506 ("Reluctantly, we affirm").

In keeping with this tradition, we affirm on two of the three claims, once again bowing to a view that, reluctant step by reluctant step, has become an ineradicable feature of our legal landscape. Nevertheless, we reverse and remand to permit appellants to proceed with the cause of action for failure to provide counseling. There comes a point where even *Feres* concatenations must come to an end; we believe this is that point.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

---

**17.** Other potential hurdles might include the required exhaustion of administrative remedies, *see* 28 U.S.C. § 2675. As we stated in *Broudy II*, 722 F.2d at 570, such obstacles are independent from *Feres* and involve inquiries separate from its application—*Feres* "only precludes claims against the government where the injury is incident to service." *Id.*

**18.** Perhaps the most glaring anomaly of the doctrine in cases such as this is that, had the naval hospital negligently treated a civilian with no ties to the military, then surely *Feres* could not bar her suit or her family's suit under the FTCA. And yet, in that hypothetical case, "there would be the same chance that the trial would 'involve second-guessing military orders.'" *Stencel*, 431 U.S. at 676, 97 S.Ct. at 2060 (Marshall, J., dissenting).