967 F.2d 586
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eric L. HOLMAN, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-15012.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 13, 1992.*
Decided June 5, 1992.
 
 1
 Before FLETCHER, D.W. NELSON and FERNANDEZ. Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 Eric Holman appeals the dismissal of his action for lack of subject matter jurisdiction. We affirm.
 
 
 4
 On August 6, 1988, Holman, then a private in the United States Army, was involved in an automobile accident on the Fort Ord Army Base in California which left him a quadriplegic. The district court found, and the parties agree, that the accident occurred while Holman and two other privates, Scott Johnson and Pierre Remy, were driving from Remy's barracks to Holman's. The privates were in two cars, with Holman a passenger in Johnson's vehicle. Johnson and Remy began to race, driving at speeds in excess of seventy miles per hour in a thirty-five mile per hour zone. Remy attempted to pass Johnson, but struck the rear end of his vehicle, causing it to swerve out of control and to run into an oak tree. Johnson and Holman incurred severe injuries as a result.
 
 
 5
 All three men had drunk beer while in Remy's barracks and both Johnson and Remy tested positive for alcohol after the accident. Although the three privates were on active duty status, they were off-duty and not performing specific military functions at the time the accident occurred. The Army has determined that Holman incurred his injuries in the line of duty, and as a result of that determination he receives medical care and disability compensation from the Veterans Administration.
 
 
 6
 Holman brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. He claimed that the United States was vicariously liable for the negligent driving of Johnson and Remy and that it had negligently failed to investigate whether Remy owned automobile liability insurance as required by Army regulations. With the exercise of reasonable care, Holman alleged, the Army would have discovered that Remy did not possess such insurance and would have banned him from driving on base, thereby preventing the accident.
 
 
 7
 The Federal Tort Claims Act waives the United States' sovereign immunity for the tortious conduct of its employees. It provides the federal district courts with jurisdiction over "claims against the United States [ ] for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). While the Act exempts the Government from liability for "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war," 28 U.S.C. § 2680(j), it does not, by its terms, preclude suits brought by members of the armed services for injuries incurred during peacetime. In Feres v. United States, 340 U.S. 135 (1950), however, the Supreme Court grafted a judicial exception to this effect onto the FTCA. Faced with three cases in which a "claimant, while on active duty and not on furlough, [had] sustained injury due to [the non-combat] negligence of others in the armed forces," id. at 138, the Court ruled that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Id. at 146. Thus was born the Feres doctrine which, while subject to criticism by "countless courts and commentators" over the years, Persons v. United States, 925 F.2d 292, 295 (9th Cir.1991), "has become an ineradicable feature of our legal landscape." Id. at 299.
 
 
 8
 The prior decisions of our Court leave no doubt that the district court properly determined that Holman incurred his injuries as a result of activity "incident to service," precluding the exercise of subject matter jurisdiction over his suit. Holman's accident partakes of all three of the characteristics which we have held, when found in conjunction, to require dismissal of a servicemember's suit under Feres.
 
 
 9
 First, Holman and his companions were on active duty status at the time their accident occurred. The vast majority of cases in which Feres has been held not to bar a servicemember's action against the Army have, by contrast, involved situations in which a plaintiff was either on leave or had already retired from the armed forces when she suffered injury. In Brooks v. United States, 337 U.S. 49 (1949) and Mills v. Tucker, 499 F.2d 866 (9th Cir.1974), two of the cases cited to by Holman, for example, the servicemembers injured or killed as a result of alleged Army negligence were on furlough at the time of the accidents they complained of. Similarly, the plaintiff in McGowan v. Scoggins, 890 F.2d 128 (9th Cir.1989), had retired from the Army years before the incidents occurred that formed the basis for his suit. That these individuals were not active members of the Army when they incurred their injuries gave rise to the conclusion that those injuries were far enough removed from any involvement in military service as to render Feres inapplicable.
 
 
 10
 Holman argues that the fact that he and his fellow privates were off-duty when they suffered their accident brings him within the ambit of those cases. We have emphasized, however, that for purposes of the Feres doctrine "[t]he relevant distinction ... runs between servicepersons who are on 'active duty' and those who have been discharged or are on furlough, not between 'off-duty' and 'on-duty' servicepersons." Persons, 925 F.2d at 296 n. 6. Thus, we have often deemed suits brought by plaintiffs who were off-duty at the time they fell victim to alleged Government negligence to involve activity 'incident to service' and thus to be barred by Feres. See, e.g., Estate of McAllister v. United States, 942 F.2d 1473 (9th Cir.1991), cert. denied, 112 S.Ct. 1164 (1992); Persons; Bon v. United States, 802 F.2d 1092 (9th Cir.1986).
 
 
 11
 Second, Holman incurred his accident at a site to which he had access because of his membership in the armed forces. In a number of cases, we have attributed considerable importance to this factor in determining whether a plaintiff's accident took place incident to military service. In Bon v. United States, 802 F.2d 1092 (9th Cir.1986), for example, we confronted a situation in which an off-duty member of the Navy had suffered injuries while paddling a canoe at a Naval recreational center. We observed that, because the center was operated only for the benefit of Navy personnel and their guests, the plaintiff had enjoyed its use "solely by virtue of her status as a member of the military." Id. at 1095. This fact was crucial in our determination that the plaintiff could be said to have incurred her accident in the course of activities incident to her service. Similarly, in Roush v. United States, 752 F.2d 1460 (9th Cir.1985), we placed much emphasis on the fact that a nightclub from which an off-duty member of the Marine Corps alleged he had been negligently evicted was operated only for the benefit of Marines and their guests in assessing whether the Feres doctrine was a bar. Most recently, in Persons, we stressed that a member of the Navy had "enjoyed the use of [a] naval hospital 'solely by virtue of his status as a serviceman,' " 925 F.2d at 296 (quoting Millang v. United States, 817 F.2d 533, 535 (9th Cir.1987), cert. denied, 485 U.S. 987 (1988)), in deeming an action for medical malpractice brought by his survivors precluded by Feres.
 
 
 12
 Here, Holman's presence at the Fort Ord Army Base on the afternoon when he suffered his accident was attributable solely to the fact that he was an active member of the military at that time. As the district court noted, Holman and his companions lived on the base by virtue of their military status, "and it was in the context of this benefit of life on the military base that the accident occurred." Memorandum Order at 5. Holman strenuously contests this conclusion. He argues that since civilians are allowed on the Fort Ord base it is inaccurate to ascribe his presence there solely to his army membership. Holman misconstrues, however, the teaching of our decisions in Bon and Rousch. In those cases, civilians were allowed on the premises where the injuries occurred as guests of the military. We focused our attention, however, on the fact that the plaintiffs' presence at the sites in question could be explained only by their participation in the military. Just as there was no reason why the plaintiffs in Bon and Roush would have been at the site of their accidents if not for their involvement in military service, the explanation for Holman's presence on the Fort Ord base was the fact that, as an active member of the Army, he lived there.
 
 
 13
 This fact distinguishes Holman's situation from that of the plaintiff's in Johnson v. United States, 704 F.2d 1431 (9th Cir.1983), a case on which Holman places much reliance. In Johnson, an Air Force officer who lived off-base suffered severe injuries in a car accident on his way home from his job tending bar at a club situated on the base. We held that Feres did not serve to preclude the officer's subsequent tort action against the Government. We pointed out that the officer's presence at the bar (the situs of the negligence in that case) was linked in only a "tenuous" fashion to the fact of his military service. Id. at 1437. His work as a bartender had nothing to do with his military activities. He worked at the club on an after-hours basis, filling a role "routinely performed by civilian bartenders." Id. at 1439. His presence at the club, or for that matter on the military base, on the night of his accident thus bore little relationship to his membership in the military. "[D]istinguishing 'between those cases involving activities arising from life on the military reservation, and those in which presence on the base has little to do with the soldier's military service,' " id. at 1437 (quoting Parker v. United States, 611 F.2d 1007, 1015 (5th Cir.1980)), we held that the Feres doctrine did not bar the officer's suit. Here, however, it cannot be said that Holman's presence on the Fort Ord base had "little to do" with his military service so as to render Feres inapplicable to his suit.[1]
 
 
 14
 Third, Holman and his companions were engaged in activity subject to military regulation at the time the accident occurred. In Bon, the plaintiff sued the Government for injuries incurred while paddling a canoe at a Naval recreational center. In applying the Feres bar, we observed that both the plaintiff and the operator of the boat she collided with "were subject to discipline for violations of the [center's] rules governing their use of its facilities and equipment," 802 F.2d at 1095. Similarly, in Persons, we observed that the doctors whose treatment of a serviceman allegedly amounted to malpractice were "subject to military orders" in the performance of their tasks. 925 F.2d at 296. In Roush, we remanded to the district court for a determination as to whether the plaintiff and the alleged tortfeasor "were within the direct control of the military at the time the negligent act occurred," 752 F.2d at 1464.
 
 
 15
 Here, the district court found that Holman was subject to military regulations at the time he suffered his accident. The record contains ample support. Fort Ord Regulation 190-5 governs the behavior of servicemembers who travel, either as drivers or as passengers, in motor vehicles on the military base. Army Regulation 190-5 provides additional requirements for servicemembers. Holman contends that these traffic regulations are of minor importance, that they do not go to the heart of the military command structure or implicate matters central to the military function. However, the same could be said of the boating regulations that we pointed to in Bon. Our concern with a plaintiff's amenability to military control at the time of injury has not included an inquiry into the nature or circumstances of that control. We have simply recognized that where the activity engaged in by a servicemember is regulated by the military, in whatever form or fashion, it makes sense to view that activity as taking place incident to the servicemember's military involvement.
 
 CONCLUSION
 
 16
 At the time he suffered his accident, Holman was an active duty member of the Army participating by virtue of his military status in a course of conduct subject to military control. We have "consistently accorded these factors decisive weight in determining whether activity was 'incident to military service.' " Persons, 925 F.2d at 296. The district court thus acted properly in dismissing Holman's suit for lack of subject matter jurisdiction under the Feres doctrine.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Holman's reliance on Johnson is misplaced for a second reason. Johnson was decided at a time when we considered only one of the three rationales articulated by the Supreme Court over the years in support of the Feres doctrine--a desire to avoid judicial intrusion into matters bearing on the effectiveness of military discipline and control--to enjoy continued vitality. See Johnson, 704 F.2d at 1435. In a subsequent decision, however, the Supreme Court reaffirmed its support for the other two rationales, namely the need to maintain the "distinctively federal" character of the relationship between the Government and its military personnel, and the existence of "generous statutory disability and death benefits" for such personnel. United States v. Johnson, 481 U.S. 681, 689 (1987) (unrelated case). Our recent applications of the Feres doctrine have, as a result, been far broader in scope than the approach taken in Johnson. See, e.g., Estate of McAllister; Persons