NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 9 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THERESA JONES, individually and as Executrix of the Estate of Landon Jones, deceased and CHRISTINA GIBSON, individually and as Executrix of the Estate of Jonathan Gibson, deceased, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF THE NAVY, <br><br> Defendants-Appellees. | No. 17-55234 <br><br> D.C. No. 3:15-cv-02087-WQH-AGS <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Submitted August 7, 2018[**]
Pasadena, California

Before: McKEOWN, CALLAHAN, and NGUYEN, Circuit Judges.

Theresa Jones and Christina Gibson appeal the district court's dismissal of

---

[*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]        The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

their negligence claim against the United States for actions and decisions by the United States Navy that allegedly led to the tragic deaths of their husbands. We have jurisdiction pursuant to 28 U.S.C. § 1291, review de novo, *Costo v. United States*, 248 F.3d 863, 865–66 (9th Cir. 2001), and affirm.[1]

The sole question on appeal is whether the rule announced in *Feres v. United States*, 340 U.S. 135, 146 (1950), that the federal government cannot be held liable for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service," applies to this case.[2] It does. The incident occurred on a Navy ship while the pilots were on duty and under orders relating to military operations in the Red Sea. Thus, their tragic deaths were "incident to service" and the Navy cannot be held liable for any negligence involved in its decision to continue using Arleigh Burke Class Destroyers. *See id.* at 137, 146 (holding the United States was not liable for allegedly quartering the decedent "in barracks known or which should have been known to be unsafe"); *see also Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 668, 674 (1977) (noting that an action against the United States for malfunction of an aircraft emergency ejection

---

[1] As the parties are familiar with the facts and procedural history, we restate them only as necessary to explain our decision.

[2] *Feres v. United States* addressed liability under the Federal Tort Claims Act, *see* 340 U.S. 135, 146 (1950), but the doctrine has been extended to cases arising under the Public Vessels Act, *see Charland v. United States*, 615 F.2d 508 (9th Cir. 1980).

system that it designed would be barred by *Feres*); *Costo*, 248 F.3d at 867

(outlining considerations relevant to *Feres* analysis).[3]

The plaintiffs argue that we should focus only on, and decline to apply, the

military discipline rationale for the *Feres* doctrine because there is no military

discipline concern here. But "we are not free to make this judgment call." *Ritchie*

*v. United States*, 733 F.3d 871, 877 (9th Cir. 2013). In *Johnson v. United States*,

the Supreme Court "reaffirm[ed]" the *Feres* doctrine, including each of its

underlying policy rationales. 481 U.S. 681, 688–92 (1987).[4] And in *Atkinson v.*

*United States*, we found that *Johnson* "compelled" us to apply the *Feres* doctrine.

825 F.2d 202, 206 (9th Cir. 1987). We did so despite "believ[ing] that the military

discipline rationale [did] not support [its] application" because other rationales did.

*Id.*

Even so, the military discipline rationale on which we have so often focused

compels us to apply *Feres* here. A trial in this case would necessarily "involve

---

[3] *Cf. Schoenfeld v. Quamme*, 492 F.3d 1016, 1023, 1025 (9th Cir. 2007) (noting that the plaintiff "was on liberty" and "not engaged in military activity when he was injured" and that "the military did not require" him to engage in the activity that injured him); *Johnson v. United States*, 704 F.2d 1431, 1439–40 (9th Cir. 1983) (noting that the plaintiff was not under "military orders or performing any sort of military mission" but instead was "off-duty" and "in exactly the same position as a civilian" when he was injured).

[4] *See also Atkinson v. United States*, 825 F.2d 202, 205–06 (9th Cir. 1987) ("Simply put, *Johnson* appears to breathe new life into the first two *Feres* rationales, which until that time had been largely discredited and abandoned.").

3

second-guessing military orders, and would . . . require members of the Armed Services to testify in court as to each other's decisions and actions" about the Navy's continued use of Arleigh Burke Class Destroyers. *See Stencel*, 431 U.S. at 671–73.

Our duty here is unequivocal. Despite criticisms that we and other courts have lodged against the *Feres* doctrine, "we are bound by the decisions of prior three judge panels . . . , [and] the decisions of prior three judge panels could not be more clear: we have 'consistently' barred claims under *Feres* 'to avoid examining acts of military personnel which were allegedly negligent with respect to other members of the armed services.'" *Ritchie*, 733 F.3d at 877 (quoting *Monaco v. United States*, 661 F.2d 129, 134 (9th Cir. 1981)). "[U]ntil Congress, the Supreme Court, or an en banc panel of this Court reorients the doctrine, we are bound to follow" it. *Costo*, 248 F.3d at 869.

**AFFIRMED.**