Joshua ROMERO, a minor, by his father and next friend, Clifford A. ROMERO; Clifford A. Romero; Roxanna A. Romero, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 91–2010.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 1, 1991.

Decided Jan. 17, 1992.

As Amended March 2, 1992.

Ashley Joel Gardner, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, Md., argued (Walter A. Oleniewski, on brief), for plaintiffs-appellants.

Loretta King, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Roger D. Einerson, Asst. Director, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Dennis Szybala, Asst. U.S. Atty., Alexandria, Va., on brief), for defendant-appellee.

Before SPROUSE, Circuit Judge, SPENCER, District Judge for the Eastern District of Virginia, sitting by designation, and HERLONG, District Judge for the District of South Carolina, sitting by designation.

OPINION

SPROUSE, Circuit Judge:

Clifford and Roxanna Romero, husband and wife, were active duty members of the United States military service at the time Roxanna received prenatal medical care from government personnel. Together, with their son Joshua (by his next friend), they filed suit against the United States under the Federal Tort Claims Act (FTCA)[1] alleging that as a result of negligent prenatal care administered to Roxanna, Joshua was born with cerebral palsy. Applying the doctrine enunciated in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the district court dismissed the action for lack of subject matter jurisdiction. The Romeros appeal, claiming that the *Feres* doctrine does not apply to this case. We agree and reverse.

I

In anticipation of the birth of her child, Roxanna was treated by government medical employees at the United States Naval Hospital at Camp Pendleton, California. The Romeros allege that the doctors' failure to implement a medical treatment plan, made necessary by Roxanna's incompetent cervix, resulted in Joshua's premature birth. His parents alleged that as a consequence Joshua suffers from cerebral palsy. Joshua claimed the obvious damages for himself. Although Roxanna suffered no physical injury as a result of the allegedly negligent conduct, she and her husband claimed consequential damages resulting from Joshua's injuries—loss of filial love, mental anguish, and the financial burden imposed by Joshua's physical condition.

The government moved to dismiss the complaint asserting that the court lacked jurisdiction because the claims fell within the *Feres* exception to governmental tort liability. The district court agreed and held that Joshua's claim was *Feres*-barred because the injuries complained of were the result of negligence directed at an active duty servicewoman. The court also held that Clifford and Roxanna's claim was *Feres*-barred because the injury arose "incident to service." It then dismissed the suit for lack of subject matter jurisdiction.

The Romeros raise two issues on appeal: whether Joshua's FTCA suit for alleged negligent prenatal care provided to his mother is barred under *Feres*, and whether his parents' suit for consequential damages is barred under *Feres*.

II

■ The FTCA provides that the United States may be sued for injuries caused by the negligence of federal employees acting within the scope of their employment, if a private person would be liable under like circumstances. 28 U.S.C. § 1346(b). This waiver of sovereign immunity is subject to a judicially-created exception known as the *Feres* doctrine. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

In *Feres*, the Supreme Court held that the estate of a soldier killed in a barracks fire while on active duty, allegedly due to Army negligence, could not maintain an action against the United States under the FTCA. Concluding that in enacting the statute Congress never intended to abrogate sovereign immunity against suits by servicemen, the Supreme Court held that the United States is not liable under the FTCA for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159.

In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Court discussed the three factors supporting its conclusion in *Feres:* (1) the distinctly federal relationship between the government and members of the armed forces that make it undesirable to leave injured servicemen dependent upon state tort law variations over which they have no control; (2) the availability of a separate nofault comprehensive benefit scheme for military personnel; and (3) the deleterious effect upon military discipline if service personnel were permitted to sue the

---

1. 28 U.S.C. §§ 1346, 2671–2680.

government. *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2058–59. Although some courts have questioned the continuing vitality of the first and second factors, we have recognized, in *Appelhans v. United States,* 877 F.2d 309, 311 (4th Cir.1989), the Supreme Court's reaffirmation of the importance of all three factors in *United States v. Johnson,* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

■ The government argues that because the prenatal care was rendered in a military hospital to an active duty servicewoman, Joshua's injuries were sustained "incident to service." To emphasize this point, the government hypothesizes that if reasonable medical measures had been undertaken to prevent Joshua's injuries, the treatment would have been directed solely to Joshua's mother. Specifically, doctors would have had to suture Roxanna's cervix to prevent its expansion during premature labor. Then, during normal labor, the sutures would have been removed so that she could deliver the baby normally. The government concludes that because the failure to provide prenatal care was directed to Roxanna, Joshua's injuries were "incident to military service" and barred by *Feres.* We disagree.

■ It is unquestioned that under the *Feres* doctrine claims brought by military personnel for injuries sustained while on active duty are barred. *United States v. Stanley,* 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (serviceman's FTCA claim to recover injuries sustained as a result of secret administration of LSD as a part of an Army experiment *Feres*-barred); *Appelhans v. United States,* 877 F.2d 309 (4th Cir.1989) (serviceman's suit under the FTCA to recover for injuries sustained during medical treatment in military hospital barred by the *Feres* doctrine). Conversely, claims brought by civilians and civilian dependents of service members who have directly sustained injuries from military personnel are not *Feres*-barred. *Burgess v.*

*United States,* 744 F.2d 771 (11th Cir.1984) (suit under the FTCA for damages civilian child sustained by Army doctors in connection with his birth not *Feres*-barred); *Portis v. United States,* 483 F.2d 670 (4th Cir.1973) (action by civilian child under the FTCA for hearing loss as a result of medical malpractice by Air Force hospital not *Feres*-barred).

We believe the precedent governing injuries by the military to civilians applies here. Joshua, the civilian child, was injured, not a military patient. Admittedly, in satisfying its duty of care to Joshua, proper prenatal treatment would have involved his mother's body. The sole purpose of the treatment, however, would have been directed at Joshua.

Mrs. Romero suffered from a congenital cervical weakness. This condition apparently placed Joshua at risk of injury. It did not, however, affect Mrs. Romero's health. Presumably her state of health would have been the same whether the physician placed the sutures or not. If the treatment had been administered, its sole purpose would have been directed at preventing injury to Joshua. The failure to place the sutures during the prenatal period and to cut them immediately preceding birth was the direct cause of the injuries to Joshua, a civilian. Because the purpose of the treatment was to insure the health of a civilian, not a service member, *Feres* does not apply.

### III

■ The government argues that if Joshua's claim is not barred under a straightforward *Feres* reading, his claim is nonetheless barred under the genesis test. The genesis test has evolved from *Stencel v. Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), in which the Supreme Court, relying upon *Feres,* prohibited an action brought by a third-party indemnity plaintiff.[2] Although *Stencel* involved a de-

---

**2.** In *Stencel,* a serviceman was injured when his fighter aircraft malfunctioned during a midair emergency. The serviceman sued the airplane manufacturer which in turn sued the United

States for indemnity. Finding that the three *Feres* rationales applied with equal force whether a suit is brought by a soldier directly or by a third party, the Court *Feres*-barred the manufac-

rivative *claim,* some circuits have expanded the *Stencel* rationale to bar derivative *injury* where the dependent's injury had its "genesis" in a service-related injury to a service member.

Genesis cases most notably have arisen in the context of alleged government negligence in exposing service members to radiation or Agent Orange resulting in injury to the fetus or infant.[3] These cases involved an injury to the service person with consequent genetic injury to offspring. Recently the genesis test has been applied to situations similar to the facts presented here but with various results. *Compare Del Rio v. United States,* 833 F.2d 282 (11th Cir.1987),[4] with *Scales v. United States,* 685 F.2d 970 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983),[5] and *Irvin v. United States,* 845 F.2d 126 (6th Cir.), *cert. denied,* 488 U.S. 975, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988).

We are persuaded that a genesis analysis is inappropriate here. The genesis test was intended to address purely derivative injury—civilian injury that derives from a service-related injury to a service person. In our view the relevant inquiry in a genesis analysis is whether a service member was injured, not whether the negligent act occurred during active duty service. Again, Joshua's injury did not derive from any injury suffered by a service member, but was caused when the government breached an affirmative duty of care owed directly to him. Because no service person was injured Joshua's claim is not *Feres*-barred.

Moreover, application of the three *Feres* factors supports our conclusion that Joshua's claim is not barred. First, the relationship between Joshua, a civilian dependent, and the government is not distinctly federal. Although civilian dependents of service members are subject to some military rules and privy to some military privileges, their relationship to the military does not present the same tension between application of state and federal laws as is present with military persons. Second, as a civilian, Joshua has no other form of military compensation for his injuries. Finally, it is not likely that a suit alleging military medical negligence inflicted on a civilian child will impair the discipline necessary for effective service. This suit will not require the court to second-guess a decision of the military necessary to the accomplishment of a military mission. *United States v. Johnson,* 481 U.S. 681, 689, 107 S.Ct. 2063, 2068, 95 L.Ed.2d 648 (1987).

We think the facts of *Scales* and *Irvin* are distinguishable from the instant case, but to the extent that their reasoning may

turer's claim. *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2058–59.

**3.** *See, e.g., Mondelli v. United States,* 711 F.2d 567 (3d Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984) (child's claim for personal injuries sustained as a result of serviceman's exposure to radioactivity while on active duty *Feres*-barred); *Lombard v. United States,* 690 F.2d 215 (D.C.Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983) (children's claims for personal injuries sustained as a result of servicemen's exposure to radiation during atomic bomb project *Feres*-barred); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982) (child's claim to recover for permanent injuries caused by genetic damage to father when he was exposed to radiation during active military duty *Feres*-barred).

**4.** In *Del Rio,* an active duty servicewoman brought suit under the FTCA on behalf of herself and her child alleging that the negligent prenatal care she received from military obstetricians resulted in premature labor and delivery, the death of one twin, and brain damage of the surviving twin. The Eleventh Circuit, after applying the three *Feres* rationales and finding none present, held that the child's FTCA suit was not *Feres*-barred. *Id.* at 287–88.

**5.** In *Scales,* an infant sued the United States under the FTCA claiming that he was born with congenital rubella syndrome because his active duty mother was negligently given a rubella vaccination by an Air Force physician without inquiry into whether she was pregnant. The court believed that the treatment accorded his mother was "inherently inseparable" from the treatment accorded him as a fetus in his mother's body. Therefore, because the infant's injury had its genesis in the injury to the servicewoman-mother, the court *Feres*-barred the infant's claim.

not be distinguishable, we simply disagree. The *Scales* decision was decided before *Johnson* and rested its analysis exclusively on the third rationale of *Feres*—military discipline. *Scales*, 685 F.2d at 973. The *Irvin* decision, although decided after *Johnson*, relied heavily on *Scales* and also rested its decision exclusively on the military discipline rationale. We feel the argument concerning the impairment of military discipline is too attenuated when a civilian child brings suit against the government for prenatal injuries.[6]

In sum, we hold that Joshua's FTCA action is not barred by the *Feres* doctrine under either a straightforward reading of *Feres* or under a genesis analysis.

## IV

■ The government conceded at oral argument that if Joshua's claim is not *Feres*-barred, the claim of his parents, Clifford and Roxanna, likewise is not barred. We agree. It is obvious that active duty service persons may recover consequential damages for non-physical injury they sustain as a result of injury to a civilian dependent. *See Williams v. United States*, 435 F.2d 804 (1st Cir.1970).

In view of the above, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with the views expressed in this opinion.

**REVERSED AND REMANDED.**

---

**6.** In *Atkinson v. United States*, 825 F.2d 202 (9th Cir.1987), *cert. denied*, 485 U.S. 987, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988), the Ninth Circuit found no connection between military discipline and suit by a servicewoman mother for injuries suffered by her because of negligent prenatal care she received at a military hospital while on active duty. We express no opinion on the correctness of the *Atkinson* court's reasoning when the plaintiff is a servicewoman mother, but find its reasoning persuasive when the plaintiff is a civilian child.