OPINION
NGUYEN, Circuit Judge:
In this appeal, we again confront the much-maligned Feres doctrine, which im *873 munizes the United States from liability for tort claims arising out of activities incident to military service. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). As with most of our Feres jurisprudence, the claims at issue arise from personal tragedy: the premature birth — and immediate death — of Jonathan Ritchie’s infant son, Gregory. Ritchie alleges that officers in the United States Army caused Gregory’s death by ordering his pregnant wife, a servicewoman on active duty, to perform physical training in contravention of her doctors’ instructions, which ultimately induced premature labor. The district court dismissed the action for lack of subject-matter jurisdiction, holding it was barred by Feres.
The question before us is whether Ritchie’s wrongful death claim against the Army falls within the reach of the Feres doctrine. In light of Supreme Court and our own precedent, we regretfully conclude that it does. We therefore affirm.
Background
The facts of this case are straightforward and uncontested. Ritchie’s complaint alleges that his wife, January Ritchie, was pregnant with their son Gregory while she was serving as a specialist on active duty with the United States Army. In June 2006, while January was stationed in Missouri, an Army physician created a “pregnancy profile” for her, which imposed a number of restrictions on her activities. Among other things, it indicated that January should not carry and fire weapons, move with “fighting loads,” engage in heavy lifting or physical training (“PT”) testing, or run/walk long distances.
January was subsequently transferred to Fort Shatter, Hawaii. According to the complaint, her supervising officers at Fort Shatter were aware of her pregnancy, but repeatedly disregarded the instructions in her pregnancy profile, forcing her to engage in physical activities such as picking up trash and “battle-focused PT ... even if she did not feel up to it.” Although January protested that she was unable to perform certain tasks due to her pregnancy, her commanding officers ignored her pleas.
On August 7, 2006, January was forced to undergo an emergency cerclage procedure in an effort to prevent premature birth. Following this procedure, January’s doctors specifically informed Army personnel that due to her “high risk” condition, she would be unable to perform her normal work duties for the remainder of her pregnancy. Her commanding officers, however, continued to disregard her doctor’s instructions that she remain at “relative rest.” On August 26, 2006, the Ritchies’ son Gregory was born prematurely. He died approximately thirty minutes after birth.
Following the denial of administrative claims, Jonathan Ritchie filed this action in district court on behalf of himself and Gregory’s estate, asserting claims under the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 1346(b), for loss of consortium and wrongful death. The district court subsequently dismissed the action for lack of subject matter jurisdiction, reasoning that Ritchie’s claims were barred under Feres.[1] Ritchie timely appealed.
*874 Standard of Review
We review de novo a district court’s determination that it lacked subject-matter jurisdiction. Atkinson v. United States, 825 F.2d 202, 204 (9th Cir.1987). Further, we “review independently the question whether the Feres doctrine is applicable to the facts reflected in the record.” Persons v. United States, 925 F.2d 292, 294 (9th Cir.1991) (citation and internal quotation marks omitted).
Discussion
I.
The FTCA waives the federal government’s sovereign immunity, rendering the United States liable “in the same manner and to the same extent as a private individual under like circumstances.... ” 28 U.S.C. § 2674; see also 28 U.S.C. § 1346(b)(1). In 1950, however, the Supreme Court carved out a judicial exception to the FTCA, holding in Feres v. United States that “the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.” 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). It subsequently extended this principle— known informally as the “Feres doctrine” — in Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), to bar third-party claims which derive directly or indirectly from injuries to service members incident to military duty. See id. at 673, 97 S.Ct. 2054 (“where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party”).
The Feres doctrine is rooted in three policy rationales:
(1) the distinctively federal nature of the relationship between the government and members of its armed forces, which argues against subjecting the government to liability based on the fortuity of the situs of the injury; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure.
Id. at 671-72, 97 S.Ct. 2054; Persons v. United States, 925 F.2d 292, 294-95 (9th Cir.1991). For the past sixty-three years, the Feres doctrine has been criticized by “countless courts and commentators” across the jurisprudential spectrum. Id. at 295; see also United States v. Johnson, 481 U.S. 681, 700, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (Scalia, J., dissenting) (“Feres was wrongly decided and heartily deserves the widespread, almost universal criticism it has received.”) (citation omitted); Costo v. United States, 248 F.3d 863, 875 (9th Cir.2001) (“The articulated ‘rational bases’ for the Feres doctrine lead in this case, as in many cases, to inconsistent results that have no relation to the original purpose of Feres.”). However, neither Congress nor the Supreme Court has seen fit to reverse course.
II.
A.
Although the Supreme Court has offered inconsistent guidance about how Feres should be applied, compare United States v. Shearer, 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (holding that the' third rationale should be considered “controlling”), with Johnson, 481 U.S. at 689-91, 107 S.Ct. 2063 (reaffirming all three rationales), we have consistently emphasized the third rationale: “[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the *875 extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or, negligent acts committed in the course of military duty....’ ” Stencel, 431 U.S. at 671-72, 97 S.Ct. 2054 (citations omitted); see Costo, 248 F.3d at 866 (“[T]he danger to discipline ... has been identified as the best explanation for Feres.”); Atkinson v. United States, 825 F.2d 202, 204 (9th Cir.1987) (indicating that the military discipline rationale is “determinative”); Monaco v. United States, 661 F.2d 129, 132 (9th Cir.1981) (“[T]he protection of military discipline ... serves largely if not exclusively as the predicate for the Feres doctrine”); cf. Persons, 925. F.2d at 295 (observing that our Feres “jurisprudence has been guided by an increasing sense of awe for things military”).
When considering whether claims by relatives of military personnel are barred by Feres, we employ a “genesis test,” asking whether the family member’s FTCA claim has its “genesis in injuries to members of the armed forces.” Grosinsky v. United States, 947 F.2d 417, 418 (9th Cir.1991) (citations omitted). The test originated in Monaco v. United States, 661 F.2d 129 (9th Cir.1981), in which the daughter of a serviceman, Denise Monaco, sued to recover damages under the FTCA for birth defects caused by her father’s unwitting exposure to atomic radiation during World War II.[2] Id. at 133-34. In holding that her claim was barred under Feres, we reasoned:
Denise’s case differs from Stencel in that she seeks relief for an injury to herself rather than indemnity for losses due to injury to her father, but this does not change the substantive analysis: the court still must examine the, Government’s activity in relation to military personnel on active duty. It is precisely this type of examination the Feres doctrine seeks to avoid.
Id. at 134 (emphasis added).
Similarly, in Persons, we held that the widow and child of serviceman Kelly Persons, who committed suicide while off-duty after having been released from a naval hospital, could not sue the hospital for failing to warn them of Kelly’s condition and for loss of consortium. 925 F.2d at 295-97. Relying on Monaco, we concluded that these claims “must be viewed as ‘derivative’ claims, having their genesis in Kelly’s service-related death.” Id. at 297 (citations omitted).[3] And in Grosinsky v. United States, 947 F.2d 417 (9th Cir.1991), we dismissed under Feres the claim of a military wife who alleged that an Army surgeon’s negligently-performed vasectomy on her serviceman husband resulted in an unanticipated child. Id. at 418-19.
*876 Application of these cases compels the same conclusion here. Ritchie alleges that military personnel at Fort Shafter caused Gregory’s death by ordering January to engage in military duties against her doctor’s recommendations. That Gregory’s injury derived from January’s military service is, in other words, the core theory of his case. If adjudication of a claim involving an Army trainee’s exposure to radiation on a football field in Chicago would improperly require judicial examination of the Army’s activity in relation to military personnel, Monaco, 661 F.2d at 134, a fortiori, a claim challenging military orders given to a servicewoman on active duty likewise cannot escape Feres. And, if a claim for failure to warn family members of impending suicide derived from a service-related suicide, Persons, 925 F.2d at 297, a claim that military orders caused an infant’s wrongful death similarly derives from his mother’s military service.
Ritchie attempts to distinguish Monaco on two grounds, neither of which is persuasive. First, he suggests that claims based upon genetic injuries differ from claims based upon injuries incurred in útero because the former are more purely derivative of injuries to the claimant’s service-member parent. What mattered to the panel in Monaco, however, was not merely that Denise’s genetic injury derived entirely from injury to her father. Rather, the dispositive factor was that adjudication of her claim would require a court to “examine the government’s activity in relation to military personnel on active duty.”[4] Monaco, 661 F.2d at 134.
Perhaps recognizing this, Ritchie asserts that adjudication of this matter would not raise the specter of January haling her supervisors into court. Since January is not a named party, he reasons, officers would be questioned in court only on Gregory’s behalf. This argument misses the point. It does not matter if military officers are questioned by counsel for January or questioned by counsel representing Gregory’s estate — either way, adjudication of the claim would “involve second-guessing military orders, and would [ ] require members of the Armed Services to testify in court as to each other’s decisions and actions.” Stencel, 431 U.S. at 673, 97 S.Ct. 2054; accord Cole v. United States, 755 F.2d 873, 878 (11th Cir.1985) (“[I]t is the need to avoid the inquiry into military orders, and not the consequences of the inquiry, that justifies the military exclusion from the FTCA.”) (citation omitted).
We can agree with Ritchie about one thing, though: it is unlikely that judicial scrutiny of the orders given to January would have a significant, deleterious effect on our military’s operation. After all, we are talking about orders commanding a pregnant woman to engage in physical activities such as picking up trash on a military base, not combat command decisions made in the heat of battle. Cf. Johnson, 481 U.S. at 699, 107 S.Ct. 2063 (Scalia, J., dissenting) (“I do not think the effect upon military discipline is so certain, or so certainly substantial, that we are justified in holding (if we can ever be justified in holding) that Congress did not mean what it plainly said in the statute before us.”). On the other hand, however, given that this case centers on orders given by a military supervisor to his subordinate, it implicates the military discipline rationale of Feres in a far more immediate sense than cases involving medical malpractice *877 claims.[5] See, e.g., Grosinsky, 947 F.2d at 417; Persons, 925 F.2d at 294; Atkinson, 825 F.2d at 203.
In any event, we are not free to make this judgment call. Absent intervening controlling authority, we are bound by the decisions of prior three judge panels. See Miller v. Gammie, 335 F.3d 889, 899-900 (9th Cir.2003) (en banc). And here, the decisions of prior three judge panels could not be more clear: we have “consistently” barred claims under Feres “to avoid exam-' ining acts of military personnel which were allegedly negligent with respect to other members of the armed services.” Monaco, 661 F.2d at 134; Persons, 925 F.2d at 295 (“[Pjractically any suit that ‘implicates the military judgments and decisions,’ runs the risk of colliding with Feres.”) (citations omitted) (emphasis added). Accordingly, under our own precedent, Feres bars Ritchie’s wrongful death claim.
B.
In contending that our precedents are distinguishable, Ritchie focuses on a line of out-of-circuit cases involving allegedly negligent prenatal care at military hospitals, in which courts adopted an “in útero” exception to Feres. See, e.g., Brown v. United States, 462 F.3d 609, 616 (6th Cir.2006); Lewis v. United States, 173 F.Supp.2d 52, 56-57 (D.D.C.2001), vacated in part on other grounds, 290 F.Supp.2d 1 (D.D.C.2003); Mossow v. United States, 987 F.2d 1365, 1369-70 (8th Cir.1993); Romero v. United States, 954 F.2d 223, 226 (4th Cir.1992); Del Rio v. United States, 833 F.2d 282 (11th Cir.1987). He maintains that the “in útero” exception should apply equally here. We disagree.
In contrast to the genesis test applied in our circuit, the “in útero ” cases turn on whether the purportedly negligent acts caused injury only to the civilian fetus, or whether both the fetus and its service-member parent were injured. Only where a fetus alone suffers injury can the claim survive Feres. For instance, in Romero, the leading “in útero ” case, the claimants alleged that an infant’s cerebral palsy was caused by a military doctor’s failure to place sutures on the cervix of his servicewoman mother during the prenatal period.[6] 954 F.2d at 224. In holding that the infant’s FTCA claim was not Feres-barred, the Fourth Circuit reasoned that if the sutures had been properly administered, their “sole purpose ... would have been directed at [the infant] Joshua.” Id. at 225. Then — without any citation to legal or medical authority — it opined that “[presumably [the mother’s] state of health would have been the same whether the physician placed the sutures or not.” Id. The court thus concluded that “[b]ecause no service person was injured [the infant’s] claim is not Feres-barred.” Id. at 226.
Similarly, in Brown, the Sixth Circuit held that Feres did. not bar the FTCA claim of Melody Brown, a child born with spina bifida after a military doctor told the child’s servicewoman mother to discontin *878 ue taking prenatal vitamins while trying to conceive. 462 F.3d at 610-11. The court reasoned that Melody’s prenatal injuries were “independent” of any injury to her mother because prenatal vitamins “would have been [taken] solely for the benefit of the fetus.” Id. at 615-16.
Contrary to what Ritchie argues, the “in útero ” exception is inapposite here because, as we previously explained, our analysis is governed by Monaco and Persons. Absent a principled basis for distinguishing these cases, we must apply the genesis test they expound; we cannot simply substitute another circuit’s test for our own.[7] See Miller, 335 F.3d at 899-900. Moreover, Ritchie’s claim does not easily map onto the “in útero ” dispensation. While there is undeniably a medical aspect to this case, Ritchie’s claim is markedly different from the medical malpractice claims in Romero, Brown, and the like. The “in útero ” cases concern medical judgments made by medical personnel at medical facilities; at issue here are military orders given by military supervisors on a military base. This distinction is important because, by challenging orders given by January’s military supervisors, Ritchie’s wrongful death claim implicates Feres’s concern about judicial interference in military personnel matters far more squarely than claims arising from a military doctor’s purportedly negligent medical judgment.
In any event, given the facts of this case, it is unlikely that the “in útero ” exception could save Ritchie’s wrongful death claim even if it did apply. Under the test applied by our sister circuits, a civilian fetus’s claim may only escape Feres if its servicewoman mother suffered no injury from the purportedly negligent acts. See Romero, 954 F.2d at 225-26. A plain reading of the allegations in Ritchie’s complaint forecloses such a finding here. Consider again what happened to January. During her second trimester of pregnancy, she was forced to perform physical tasks which caused her considerable pain, even though she told her supervisors that she did not feel well enough to carry out their orders. Due to her pain, she was later taken by ambulance to an emergency room, where her cervix was stitched shut. Her supervisors continued to disregard her doctor’s instructions, however, which ultimately induced her premature labor at five-and-half months. And, worst of all, her baby died half an hour after she gave birth. To hold that January was not injured at all, as Ritchie urges us to do, requires eschewing common sense and human experience.
Conclusion
We can think of no other judicially-created doctrine which has been criticized so stridently, by so many jurists, for so long. The Feres doctrine has generated pained affirmances from this circuit, e.g., Monaco, 661 F.2d at 134; Persons, 925 F.2d at 297; a forceful dissent by Justice Scalia (joined by Justices Brennan, Marshall, and Stevens), Johnson, 481 U.S. at 692-703, 107 S.Ct. 2063 (Scalia, J., dissenting); and doctrinal contortions from our sister circuits, e.g., Romero, 954 F.2d at 224-25; Brown, 462 F.3d at 615-16. Yet, unless and until Congress or the Supreme Court choose to “confine the unfairness and irrationality that [Feres ] has bred,” Johnson, 481 U.S. at 703, 107 S.Ct. 2063, we are bound by controlling precedent. We therefore re *879 gretfully hold that Ritchie’s suit is barred by Feres.
AFFIRMED.
FARRIS, Circuit Judge, concurring: I concur in the result.

. Because the district court concluded that this action was barred under Feres, it did not reach the jurisdictional question of whether the claims were filed after the two-year period set out in 28 U.S.C. § 2401(b). See Mann v. United States, 399 F.2d 672, 673 (9th Cir.1968) (“Institution of suit within the two-year period [set forth in 28 U.S.C. § 2401(b)] is a jurisdictional requirement.”).

. The underlying facts of Monaco are compelling: During World War II, David Monaco was stationed at the University of Chicago where, as a participant'in the Army Specialized Training Program; ■ he was required to exercise at the school’s football field. Id. at 130. Unbeknownst to him, underneath the stadium was a laboratory in which the government was conducting atomic experiments as part of the “Manhattan Project.” Id. In addition to giving Monaco colon cancer, the exposure to atomic radiation resulted in genetic abnormalities which caused his daughter to be born with severe birth defects. Id.

. In contrast, we held that the Persons' claim for failure to provide adequate counséling was not Feres-barred, essentially because there was no causal nexus between the alleged injury and the Navy's purported negligence with respect to Kelly Persons. See Persons, 925 F.2d at 298 (“[Tjhe hospital's alleged breach of its duty [to provide adequate counseling] after the tragedy was completely independent of the purported negligence that led to Kelly's demise. As such, it interrupted the causal chain running from the hospital's purportedly negligent treatment of Kelly Persons and set in motion a new sequence of events.”).

. Even if Ritchie could distinguish Monaco on the grounds that it involved a genetic injury, that still would not get him past Persons or Grosinsky, which apply the genesis test in the context of medical malpractice and loss of consortium claims.

. In a similar vein, we have construed the “incident to service” requirement broadly in non-third party cases applying Feres. See, e.g., Costo v. United States, 248 F.3d 863, 869 (9th Cir.2001) (holding that Feres barred claims brought by the estates of sailors who drowned during a recreational rafting trip, which had been organized by the Navy).

. Like January Ritchie, Roxana Romero had been diagnosed with an “incompetent cervix.” Romero, 954 F.2d at 224. This condition “occurs when weak cervical tissue causes or contributes to premature birth or the loss of an otherwise healthy pregnancy.” Mayo Clinic, available at http://www.mayoclinic. com/health/incompetent-cervix/DSO 1198 (last visited October 16, 2013). In practical terms, this means that the cervix may "begin to open too soon — causing [a woman] to give birth too early.” Id.

. It is not enough that this case, like the “in útero" cases, concerns prenatal injuries. While pregnancy may present unique biological and/or philosophical considerations, see Atkinson v. United States, 825 F.2d 202, 207 (9th Cir.1987) (Noonan, J., concurring), none justify departing from our reasoning in Monaco and Persons.